GONZALES, Judge.
This is an appeal from a judgment awarding a motion for directed verdict in favor of defendant. We reverse and remand for further proceedings consistent with this decision.
FACTS
On May 31, 1986 plaintiff, Calvin E. “Smokey” Goza, suffered a broken leg when he was kicked by a horse owned and ridden by defendant Gayle Cornwell.[1] Mr. Goza filed suit against Ms. Cornwell, her insurer, Safeco Insurance Company of America, and Sixth Ward Community Park. Sixth Ward Community Park was dismissed from the suit prior to trial. At trial the plaintiff and defendants stipulated that the damages suffered by Mr. Goza would not exceed $65,000 plus medical specials of $4,115.48, and would be subject to reduction for contributory fault. The issues of liability, causation and contributory fault were tried before a jury. At the conclusion of plaintiffs case, the defendant moved for a directed verdict, based upon the plaintiff's failure to prove that the horse presented an unreasonable risk of harm to Mr. Goza. The court took the motion under advisement and the defendants went forward with their case. After the defendants presented their case, the judge charged the jury. The judge failed to charge the jury on the issue of unreasonable risk of harm and the proper method of determining unreasonable risk of harm. After deliberation, the jury returned a verdict finding that Mr. Goza was injured by the horse owned by Ms. Cornwell and assessing fault at 20% for plaintiff and 80% for defendant. The judge at that time granted the defendant’s motion for directed verdict, finding that the horse in no way created an unreasonable risk of harm to plaintiff. Mr. Goza is appealing the judgment granting the motion for directed verdict in favor of defendant. Appellee has answered the appeal urging that if the directed verdict is vacated, then the jury’s determination that the plaintiff was only 20% at fault was error.
According to the plaintiff’s versions of the facts, he was merely sitting on his horse, eating a cookie and looking in the other direction when defendant’s horse kicked him for no apparent reason. According to the defendant’s version of the facts, the plaintiff galloped his horse noisily up behind the defendant’s horse and bumped into defendant’s horse, causing it to react by kicking.
Louisiana Code of Civil Procedure article 1810 provides:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
Louisiana Code of Civil Procedure article 1672(B) provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown *706 no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
At one time, La.C.C.P. art. 1672(B) was La.C.C.P. art. 1810(B). This paragraph was transferred from La.C.C.P. art 1810 to La.C.C.P. art. 1672 by Acts 1983, No. 534. The provisions of 1672(B) are taken from Federal Rule of Civil Procedure 41(b) which governs involuntary dismissals. Louisiana Code of Civil Procedure article 1810 was analyzed by this court in Grimes v. Stander, 394 So.2d 1332, 1333, (La.App. 1st Cir.1981), which found:
The background and principles for application of ... art. 1810 are well set forth in Campbell v. Mouton, 373 So.2d 237 (La.App.3d Cir.1979), from which we quote:
“Moreover, since the source of LSA-C.C.P. article 1810A is the Federal Rules of Civil Procedure, we believe that the correct standard is that applied in the Federal Courts. See Madison v. Travelers Insurance Company, 308 So.2d 784 (La.1975). This standard is succinctly stated in the following language penned by the U.S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969):
‘On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just the evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.’ ” (373 So.2d 237, 239).
In order to determine whether the judge was correct in finding that reasonable minds could not differ that the horse did not present an unreasonable risk of harm to defendant and in granting the motion for directed verdict, we have to examine the substantive law that relates to the facts of this case. As the Louisiana Supreme Court stated in Boyer v. Seal, 553 So.2d 827, 834-5 (La.1989):
There is no better reason in principle or policy than in history to expand responsibility for animals into a rule of superstrict liability. This court rendered in Loescher [v. Parr, 324 So.2d 441 (La.1976) ] what it plainly considered to be a fundamental judgment using civilian and comparatist methodology to combine diverse conceptions into a coherent principle giving strict liability manageable scope and harmonizing its several categories. The principle is that the guardian of the person or thing should bear the cost of damage caused through unreasonable risks of harm that his charge creates. There are various policies supporting the unreasonable risk principle: As Loescher observes, the person who has the guardianship and usually the enjoyment of the person or thing should bear the cost of damage caused by risks they create rather than the innocent victim. Further, it is thought that the guardian is in a better position to anticipate, detect, guard against, and insure against these risks, making him a better risk spreader and more efficient conductor of the deterrent effects of civil liability. A competing policy, however, is that the guardian should not be responsible for protecting against all risks; some risks are relatively too small to require him to protect others therefrom. Thus, if the unreasonable risk of harm principle were to be abolished in the cases involving liability for animals, these policies would tend to be defeated or at least not promoted and owners would be made insurers against loss from any risk, no matter how insignificant or socially tolerable the risk might be. We see no rea *707 son that animal owners should be treated less favorably than owners of buildings and guardians of inanimate things under strict liability conceptions of the Civil Code. Moreover, it would appear that doing so might undermine the principles’s application to strict liability under other delictual articles of the Code. Consequently, we conclude that the unreasonable risk of harm principle should be maintained in animal cases in the interest of the continued manageable and harmonious application of strict liability under the Civil Code.
This court has explained that the judicial process involved in deciding whether a thing under garde posed an unreasonable risk of harm is similar to that of taking into account all of the social, moral, economic and other considerations as would a legislator regulating the matter. Entrevia v. Hood, 427 So.2d 1146 (La.1983). See also Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988); Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971); B. Cardozo, The Nature of the Judicial Process 105 (1921); Geny, Method of Interpretation and Sources of Private Positive Law § 174 (LSLI translation 2d ed. 1963). We have also noted that the unreasonable risk of harm concept is virtually identical with the risk-utility balancing test that is part (but not all) of both negligence and strict products liability theories in Anglo-American law. Bell, supra; Entrevia, supra. See also L. Hand, J. in United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir. 1947) and Conway v. OBrien, 111 F.2d 611, 612 (2d Cir.1940); Restatement (Second) of Torts §§ 291-293, 402A; Harper, James and Gray, The Law of Torts § 16.9 (1986); Prosser and Keeton On Torts § 31 (5th ed. 1984); R. Posner, A Theory of Negligence, 1 J. Legal Stud. 29 (1972). It is interesting and instructive that Justice Tate, the author of this court’s opinions in Loescher and Holland [v. Buckley, 305 So.2d 113 (La.1974) ], in an opinion he wrote as a judge of the United States Fifth Circuit Court of Appeals, confirmed that the legislative fact consideration and risk-utility balancing tests are valid approaches to determining whether a person or thing under garde posed an unreasonable risk of harm to others. See Matthews v. Ashland Chemical, Inc., 703 F.2d 921 (5th Cir.1983).
The standard set out by this court in Grimes v. Stander for granting directed verdicts is a very high standard and directed verdicts should be granted sparingly. We interpret the last sentence of La.C.C.P. art. 1672(B) to be applicable to both directed verdicts and involuntary dismissals.[2] That is, whether the case is tried before a jury or a judge, the court should be able to decline to render a decision on the motion for directed verdict until the close of all the evidence, so that in the event the trial judge grants the motion for directed verdict, and that ruling is later reversed on appeal, the case need not be remanded for re-trial. With all of the evidence before it, the appellate court can then make a ruling based on the record.
The factual circumstance that has caused the most trouble under the old federal rule and the current Louisiana law is the one presented in this case, that is when a motion for directed verdict is not acted on before the case is submitted to the jury. A review of the federal jurisprudence which we are directed to follow in this area reveals considerable disagreement as to the proper procedure. The matter was finally *708 resolved with the adoption of a new federal rule. The new federal rule solves the problem presented in this case and we deem it to be the proper procedure to be followed by Louisiana judges whenever a motion for directed verdict has not been acted on before the case is submitted to the jury. The rule is that the motion is deemed to be submitted to the action of the jury and the trial court is powerless to grant a motion for a directed verdict after that point. Whatever the verdict of the jury is will be the judgment of the court, unless set aside by the judge granting a later filed motion for a judgment notwithstanding the verdict, or unless abrogated by the court, by granting a motion for new trial. The new federal rule solves much of the confusion in this area by denominating these motions (the motion for directed verdict and the motion for judgment notwithstanding the verdict) as one motion called a motion for judgment as a matter of law. These various motions, as contained in the current state statute, are basically all the same motions and only change names depending on the time at which they are made. They have the same criteria for determination. Since we find it was legal error for the trial court to have granted the judgment for directed verdict after the submission of the case to the jury, we are required to reverse the judgment of the trial court.[3]
Although we have decided a procedural and legal basis for reversing the trial court, additionally we find on the merits a grounds for reversal. Because in the case sub judice we cannot tell from the record *709 what procedure the trial judge applied in granting the directed verdict, we must look at all the facts (as required by Grimes) and apply the Boyer v. Seal rationale to determine if reasonable minds could differ as to whether the horse posed an unreasonable risk of harm. In doing so, we find that because of the disputed factual issues and the necessary credibility determinations, we cannot say that “the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict ...” Campbell v. Mouton, supra, as quoted by Grimes v. Stander, 394 So.2d at 1334. The judge committed a mixed error of both fact and law in granting the motion for directed verdict and was manifestly erroneous in finding that reasonable minds must inevitably conclude that the animal involved did not pose an unreasonable risk of harm. Because we find that the trial court’s factual finding was manifestly erroneous, we reverse the granting of the motion for directed verdict. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979); Rosell v. ESCO, 549 So.2d 840 (La.1989). Because we reverse the granting of the motion for directed verdict, we must remand this case to the district court so that the jury verdict can be reinstated and a judgment carrying out the jury verdict can be signed by the trial judge. La.C.C.P. art. 1911. The defendants will then have all of the rights of any defendants in their position. We understand that this ruling will likely result in multiple appeals, but that is dictated by the circumstances of having two different triers of fact arrive at two different results.
Therefore, for the foregoing reasons, the judgment is reversed and this case is remanded to the district court so that the jury verdict may be reinstated and a judgment to that effect may be signed by the trial judge. Costs of this appeal are to be borne 50% by plaintiff and 50% by defendants.
REVERSED AND REMANDED.

. We note that defendant’s first name is spelled Gail in the petition, but is spelled Gayle throughout the rest of the record.

. The federal courts have adopted a completely new rule for directed verdicts and renamed it. Federal Rule of Civil Procedure 50 deals with judgments as a matter of law. The jurisprudence interpreting the old rules was conflicting and mixed, particularly on the issue of the timing for the former motion for directed verdict. Since the federal law has corrected this problem with a new rule, there is no good reason to rely on federal jurisprudence in interpreting a law which has now been replaced. Additionally, no useful purpose was served by those cases requiring procedural exactness in laying all the foundations or predicates for the motion for directed verdict. This problem could easily be solved by the Legislature or the Louisiana Law Institute's reviewing this area and devising a clearer scheme. The new federal rule need not be copied but a rule which has its greater clarity would be helpful to both the bench and bar and could solve many procedural problems such as the ones encountered in this case.

. Rule 50. Judgment as a Matter of Law in Actions Tried by Jury; Alternative Motion for New Trial; Conditional Rulings
(a) Judgment as a Matter of Law.
(1) If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.
(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.
(b) Renewal of Motion for Judgment After Trial; Alternative Motion for New Trial. Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. If no verdict was returned, the court may, in disposing of the renewed motion, direct the entry of judgment as a matter of law or may order a new trial.
(c) Same: Conditional Rulings on Grant of Motion for Judgment as a Matter of Law.
(1) If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
(2) The party against whom judgment as a matter of law has been rendered may serve a motion for a new trial pursuant to Rule 59 not later than 10 days after entry of the judgment.
(d) Same: Denial of Motion for Judgment as a Matter of Law. If the motion for judgment as a matter of law is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling the party to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for judgment. If the appellate court reversed the judgment, nothing in this rule precludes it from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be granted.