622 So.2d 698 (1993)
MARYLAND CASUALTY COMPANY and Carla P. Jenkins
v.
DIXIE INSURANCE COMPANY.
No. 92 CA 0816.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
Opinion Granting Rehearing in Part and Denying Rehearing in Part August 4, 1993.
*699 Lindsey J. Leavoy, and Alan L. Schwartzberg, Baton Rouge, for plaintiffs-appellants, Maryland Cas. Co. and Carla P. Jenkins.
William S. Marshall, Jr., Covington, for defendant-appellee, Dixie Ins. Co.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
WHIPPLE, Judge.
This is an appeal by Maryland Casualty Company (Maryland) from a judgment in favor of Dixie Insurance Company (Dixie), dismissing Maryland's action against Dixie for the alleged bad faith of Dixie in its handling of a claim against its insured, Ronald Bailey. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
The events which gave rise to the present suit began on October 14, 1985, when Bailey, who was proceeding southbound on Louisiana Highway 44 in Gonzales, Louisiana, attempted to make a left turn onto Rome Street and struck the vehicle of Carla P. Jenkins.
At the time of the accident, Dixie provided Bailey with automobile insurance, with bodily injury liability limits of $10,000.00 per person and $20,000.00 per accident. Dixie's policy specifically excluded coverage for punitive or exemplary damages.
Dixie received notice of this claim on October 29, 1985. On October 30, 1985, Dixie attempted to contact Bailey by telephone, but his phone had been temporarily disconnected. Dixie mailed a letter dated October 30, 1985, to Bailey requesting that he contact Dixie's claims representative at his earliest possible convenience. Bailey telephoned Dixie on November 4, 1985, and spoke with Alice Long. Long's file notation indicates that Bailey related to her that he had a green light when he turned left. He further stated that although he had been cited for D.W.I., he had only had two beers "right before" the accident. Bailey stated that there was no indication of any injuries at the scene.
On November 6, 1985, Dixie received a copy of the police report, which indicated that Bailey was ticketed with hit and run and third offense D.W.I. The police report also indicated that Jenkins had suffered moderate injuries. On the police report, Bailey's address was listed as 7836 Director Drive, Baton Rouge, Louisiana.
Because of Bailey's apparent intoxication at the time of the accident, Jenkins' attorney, Alan Schwartzberg, informed Dixie on November 14, 1985, of the possibility of a punitive damage claim. On the same date, Dixie sent Bailey a letter stating that his continued failure to cooperate with Dixie could result in denial of coverage and requesting that he contact Dixie to discuss the matter further. The letter was sent by certified mail to 929 Camelia Street, Baton Rouge, Louisiana, the address listed on Bailey's policy (the Camelia Street address). The letter was returned to Dixie undelivered with no forwarding address.
Dixie again attempted to contact Bailey by telephone on January 27, 1986, but Bailey's phone was no longer in service. Dixie sent Bailey a letter dated February 4, 1986, informing him that Rick Nevils had been retained to defend him in this matter. The letter further stated that Jenkins was seeking damages in excess of Bailey's coverage limits and acknowledged that Bailey might want to retain personal counsel at his own expense to represent him for his personal exposure. However, the letter did not mention that the policy excluded coverage for punitive damages. This letter was also sent to the Camelia Street address.
On May 16, 1986, Schwartzberg sent a letter to Nevils, stating the following: "If your principal will immediately tender their [sic] $10,000.00 policy limits we will accept same reserving our rights against the UM carrier and dismiss our punitive damage claim against your client. Please let me have your reply at your earliest convenience." Schwartzberg enclosed with the letter an itemized list of the medical expenses Jenkins had incurred, which amounted to $4,493.57 and a claim for lost earnings of $2,944.00.
*700 Having received no response, Schwartzberg sent Nevils another letter on June 2, 1986, reiterating Jenkins' offer to release Bailey from further liability and stating that "[t]his offer will remain open for ten (10) days from the receipt of this letter."
At the time these offers were made, Dixie had medical reports from Dr. John R. Clifford, a board certified neurosurgeon, who had diagnosed Jenkins as suffering from cervical pain and had treated her with physical therapy and traction. Nevils testified that after reviewing the findings and evaluations of Dr. Clifford, he perceived that there was primarily diagnostic treatment within ninety days of the accident and a diagnosis of a soft tissue injury.
On June 10, 1986, Nevils wrote to Schwartzberg, relating a counteroffer by Dixie of $7,500.00 plus court costs. Nevils stated that the counteroffer was based on "the very unremarkable and normal results obtained by Dr. John Clifford in his diagnostic tests of [Jenkins]."
On June 20, 1986, Danny Franks, claims representative for Dixie, sent a letter to Bailey with the address listed as "929 Canella St." The letter informed Bailey that Jenkins had demanded full policy limits, but that Dixie did not believe Jenkins' injuries were sufficient to warrant payment of full policy limits. The letter also advised Bailey to contact Franks if he had any questions.
By letter dated June 25, 1986, Schwartzberg rejected Dixie's counteroffer and stated that Jenkins' offer to accept $10,000.00 in settlement was being withdrawn.
Dixie's file reflects that by October 15, 1986, Dixie had obtained Bailey's parents' phone number. Bailey's mother informed Dixie that Bailey had been working out of the state.
On January 12, 1987, Robert Payne, then a claims representative for Dixie, telephoned Schwartzberg in an attempt to settle the claim. Payne made an offer of $9,000.00, but Schwartzberg related that he could not settle for less than $15,000.00. After some discussion, Payne offered Dixie's $10,000.00 policy limits for a full release. This offer was not accepted. Payne's file note indicates that he attempted to contact Nevils after speaking with Schwartzberg, but was unable to reach him. No attempt was made by Dixie to inform Bailey of Jenkins' offer to settle the claims against him for $15,000.00.
The case eventually went to trial on January 29, 1987, and the parties stipulated that Bailey was intoxicated at the time of the accident. On March 4, 1987, after trial but before the trial court had rendered judgment, Dixie again offered to settle the claim for $10,000.00. Jenkins' attorney refused the offer. On the same date, Dixie sent a letter to Bailey at the Camelia Street address, stating that a settlement was being negotiated, but that Dixie's $10,000.00 offer had been refused. The letter also informed Bailey that he would be responsible for any judgment amount over $10,000.00. This letter was returned to Dixie undelivered with a sticker listing Bailey's address as Director Drive, the address which had been listed on the police report. The letter was redirected to the Director Drive address by Dixie on March 13, 1987.
By judgment dated February 11, 1988, the trial court found in favor of Jenkins and against Bailey, Dixie, and American General Fire and Casualty Company, Jenkins' uninsured motorist carrier. Jenkins was awarded damages in the amount of $65,495.38, consisting of $30,495.38 in compensatory damages and $35,000.00 in exemplary damages.[1] On the date of judgment, Dixie sent a letter to Bailey, certified mail, advising him of the trial court's judgment. In this letter, Dixie, for the first time, explained to Bailey that punitive damages were not covered by his policy with Dixie and that this portion of the judgment was his own personal responsibility.
By instrument executed in February 1989, Bailey assigned to Jenkins and Maryland *701 all rights that he had against Dixie arising from its failure to settle.[2] On May 4, 1989, Jenkins and Maryland brought the present suit against Dixie for its alleged bad faith refusal to accept the compromise offers. Prior to trial of this matter, Dixie settled with Jenkins, and the case proceeded to trial on October 17, 1991, between Maryland and Dixie.
By judgment dated December 23, 1991, the trial court awarded judgment in favor of Dixie and against Maryland, dismissing Maryland's suit at its cost. Maryland appeals, alleging that the trial court erred in granting judgment in favor of Dixie.

DISCUSSION

Standard of Review
Maryland asserts that the facts are not in dispute in this case and that accordingly, the doctrine of manifest error has no application in our review of the trial court's decision, citing Shepherd v. City of Baton Rouge, 588 So.2d 1210, 1212 n. 3 (La.App. 1st Cir.1991). We agree. The issue before this court is whether, under the undisputed facts established or stipulated at trial, Dixie's actions constitute bad faith handling of the claim. Stated another way, as a reviewing court, we must consider whether the trial court came to an improper legal determination under the undisputed facts of this case. See LSA-C.C.P. art. 2164; Randall v. Cuna Mutual Insurance Group, 424 So.2d 489 (La.App. 5th Cir. 1982).

Bad Faith of Dixie
The insurer is the champion of its insured's interests. The interests of the insured are paramount to those of the insurer, and the insurer may not gamble with the funds and resources of its policyholders. Cousins v. State Farm Mutual Automobile Insurance Co., 294 So.2d 272, 275 (La.App. 1st Cir.), writ refused, 296 So.2d 837 (La.1974). The insurer, as a professional defender of lawsuits, is held to a higher standard than an unskilled practitioner, and what may be neglect on the part of the latter may well constitute bad faith on the part of the insurer. Keith v. Comco Insurance Company, 574 So.2d 1270, 1277 (La.App. 2nd Cir.), writ denied, 577 So.2d 16 (La.1991).
This court, in Cousins, set forth the following six factors to be considered in determining whether an insurer acted arbitrarily or in bad faith in failing to compromise: (1) the probability of the insured's liability, (2) the adequacy of the insurer's investigation of the claim, (3) the extent of damages recoverable in excess of policy coverage, (4) the rejection of offers in settlement after trial, (5) the extent of the insured's exposure as compared to that of the insurer, and (6) the nondisclosure of relevant factors by the insured or insurer. Cousins, 294 So.2d at 275.
In considering these factors, we conclude that Dixie clearly acted in bad faith in handling this claim. The accident was obviously due to Bailey's negligence, and this fact should have been evident to Dixie very early in its investigation of the claim. Although Nevils testified that Dixie had some reservations concerning Bailey being "[one] hundred percent liabl[e]" based on Bailey's November 4, 1985 statement to Dixie regarding the accident, Nevils admitted that the police report which was received by Dixie two days later should have raised a "red flag" as to Bailey's story.
Although Dixie did not question any of the three other occupants of Bailey's vehicle in investigating the circumstances surrounding the accident, in a document dated December 11, 1985 and titled "30 Day Report," which was a part of Dixie's file, Dixie claims representative Alice Long characterized Dixie's liability as "100%" and noted that Bailey had been charged with D.W.I. Certainly, by September 22, 1986, the date when Nevils wrote to Dixie that "this is a case where liability is clear against our insured," Dixie was aware that it would be liable for this claim.
*702 Moreover, because of the punitive damage claim resulting from Bailey's alleged intoxication, it was evident that despite the fact that Jenkins' injuries were not perceived to be extensive, damages would be recoverable in excess of policy limits. Because of the punitive damage exclusion in Bailey's policy, Bailey's exposure was much greater than that of Dixie.
Dixie's nondisclosure of relevant factors is, without question, the most significant factor in the instant case. While the policy provided by Dixie excluded coverage for punitive damages, this fact, as well as its legal significance to Bailey, was not explained to Bailey until after the trial court had rendered judgment against him.
Acceptance of Jenkins' May 16, 1986 or June 2, 1986 offer to settle for Dixie's policy limits would have released Bailey from any further liability, including any liability for punitive damages. However, Bailey was only advised of these offers after Dixie had effectively rejected them by making a counteroffer of $7,500.00. More importantly, Jenkins' January 12, 1987 offer to settle all claims against Bailey for $15,000.00 was never communicated to Bailey by Dixie. Dixie also failed to inform Bailey of the significance of these offers.
In Roberie v. Southern Farm Bureau Casualty Insurance Company, 250 La. 105, 194 So.2d 713 (1967), the Louisiana Supreme Court found that the insurer was in bad faith in not fully informing its insured of compromise negotiations and offers. In Roberie, the insurer rejected an offer made on the date of trial to compromise at a sum in excess of policy limits. The insurer completely ignored the insured by not even mentioning the offer and proceeded to trial. In finding bad faith, the court stated:
[T]he insured, Roberie, was kept in the dark; he was never apprised of the offers of compromise nor warned of his potential liability; he was ignored. He needed information and advice on the point of his potential liability, which he was not given by his representative, his insurer. A conflict of interest arose between the insurer and the insured. The insurer failed to discharge its duty towards its insured, thereby precluding any decisive action on his part. We find the actions of [the insurer] towards Roberie were more than negligent; they were in bad faith and in utter disregard of Roberie's natural desire to protect himself from financial loss. (Emphasis added.)
Roberie, 194 So.2d at 716.
Likewise, in the instant case, Bailey was never advised by Dixie of the January 12, 1987 offer, of the legal significance of the punitive damage exclusion in his policy, or of the significance of Jenkins' offers which would have released him from liability for punitive damages. In failing to communicate to Bailey settlement negotiations and compromise offers as well as needed information and advice on the point of his liability, Dixie exposed Bailey to great potential for excess liability and precluded him from taking any decisive action in his own defense.
In its brief, Dixie contends that Bailey's failure to inform Dixie that he had moved to a different address rendered him inaccessible to Dixie for any and all purposes, including disclosure of relevant factors. However, Dixie should have been aware at the time it received the police report on November 6, 1985 that Bailey was using the Director Drive address. Moreover, this argument further lacks merit as Dixie did not seek to inform Bailey of the May 16, 1986 and June 2, 1986 offers until after it had rejected them and never sought to explain to him the legal significance of these offers considering his potential exposure to punitive damages.
In reaching its decision, the court below stated:
I just think that the good insurance defense lawyers and firms that do the work, they need a little more time to adequately investigate. It seems like this was a quick deal. Schwartzberg said he had them set up. Well, I don't know.... But it was just, I think, premature, the offer to settle and the rejection of it. It caught them by surprise *703 and they were unprepared to deal with it at that time. They did not have enough informationMr. Nevils didn't, in my opinion.
When counsel for Maryland asked the trial judge whether the court had considered the January 1987 settlement offer and its refusal, the trial judge responded that he had looked at the whole picture. We conclude, however, that the trial court, in finding in favor of Dixie, failed to give due consideration to Dixie's duty to keep its insured informed of settlement offers and needed information and advice on the point of its insured's potential liability, especially where there was a probability of recovery in excess of policy limits. Therefore, we find that the trial court improperly concluded that Dixie's nondisclosure and failure to communicate or properly advise its insured did not amount to bad faith under the facts presented herein.
Accordingly, pursuant to the act of assignment between Bailey and Maryland, Maryland is entitled to recover the same principal and interest Bailey would have recovered had he brought this claim against Dixie. The judgment in favor of Maryland and against Bailey is for $25,000.00 plus interest from date of judicial demand. Thus, Maryland is entitled to judgment herein for $25,000.00 plus interest from date of judicial demand in the original suit, namely January 22, 1986.
Where the insurer has been guilty of bad faith toward its insured, which bad faith culminates in an excess judgment being rendered against the insured, and where the insured has had to employ an attorney to protect his interests and to oppose the bad faith conduct of the insurer, an award of attorney's fees is proper. Domangue v. Henry, 394 So.2d 638, 641 (La. App. 1st Cir.1980), writ denied, 399 So.2d 602 (La.1981). Thus, we conclude that Maryland, standing in the stead of Bailey, is entitled to an award of attorney's fees. The parties have stipulated that the attorney fee arrangement between Maryland and its counsel obligates Maryland to pay attorney's fees in the amount of one-third of the gross amount recovered by settlement or judgment. Consequently, we conclude that an award of attorney's fees to Maryland in the amount of $8,000.00 is reasonable under the circumstances.

DECREE
For the reasons expressed herein, the judgment of the trial court in favor of Dixie Insurance Company is reversed, and judgment is hereby rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Maryland Casualty Company, and against defendant, Dixie Insurance Company, in the amount of $25,000.00 together with interest from date of judicial demand on January 22, 1986, until paid; and in the amount of $8,000.00 for attorney's fees, together with interest on this amount from date of judicial demand herein on May 4, 1989; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Dixie Insurance Company be and the same is hereby cast for all costs.
REVERSED AND RENDERED.
SHORTESS, J., concurs with reasons.
SHORTESS, Judge, concurring.
I concur in this result. My examination of this record convinces me that Dixie should have settled this case for $10,000.00 in June 1986 when it received plaintiff's unconditional offer to settle her entire claim, including punitive damages, for that amount. Rather than do so, it elected to roll the dice with its $7,500.00-$8,000.00 counter offer on June 10, 1986, apparently feeling that plaintiff would counter with a figure somewhat under its $10,000.00 coverage. But plaintiff revoked her offer! Thereafter, Dixie's claim representative Robert E. Payne attempted to settle with plaintiff's attorney within two weeks of trial (January 12, 1987) for $9,000.00 and finally even offered its $10,000.00 limits, but plaintiff had raised her demand to $15,000.00 and did not budge. At trial, plaintiff prevailed for general damages in excess *704 of Dixie's coverage and was also awarded punitive damages of $35,000.00.
Another troubling aspect of this case is the fact that Dixie did not notify Bailey of plaintiff's subsequent offer to settle for $15,000.00 just before trial. It was under an express duty to do so.
I respectfully concur.

ON APPLICATION FOR REHEARING
Rehearing granted in part, denied in part.
The application for rehearing filed on behalf of Dixie Insurance Company is granted in part and denied in part. It is granted insofar as our judgment cast Dixie Insurance Company for legal interest on the award for attorney fees from date of judicial demand. We amend our decree to provide that interest on the attorney fees is awarded from date of judgment.
In all other respects, the application for rehearing is denied.
NOTES
[1] Both Dixie and Bailey devolutively appealed the February 11, 1988 judgment. In an unpublished opinion, this court affirmed the lower court's judgment. See Jenkins v. Bailey, 544 So.2d 1351 (La.App. 1st Cir.1989).
[2] Although it is unclear from the record, Maryland is apparently a subsidiary of American General Fire and Casualty Company.