734 So.2d 940 (1999)
Lydia GOURLEY and Floyd W. Gourley
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Gamco Trucking, Inc., Omar D. Spencer and Janet Lynn Broussard.
No. 98 CA 0934.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
*941 Charles A. Schutte, Jr., Baton Rouge, for Defendant in Intervention-Appellee Prudential Property and Casualty Insurance Company.
Philip J. Dugas, Baton Rouge, for Intervenor-Appellant Samera L. Abide.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
*942 GUIDRY, J.
This is an appeal from a judgment rendered in a case alleging an insurer's badfaith failure to settle a claim, thereby exposing its insured to a judgment in excess of the insurance policy liability limit. Judgment was entered in favor of appellant, Samera L. Abide, Trustee of the bankruptcy estate of Janet Broussard, and against appellee, Prudential Property and Casualty Insurance Company ("Prudential"), with damages awarded being less than the excess judgment. Appellant has appealed the damages portion of the judgment, while appellee has timely answered and assigned error to the trial court's judgment of liability against Prudential and the trial court's jury instructions. For the following reasons, we amend the judgment and, as amended, affirm.

FACTS AND PROCEDURAL HISTORY
On November 5, 1991, Lydia Gourley ("Ms.Gourley") was traveling south on Louisiana Highway 3034, in East Baton Rouge Parish, Louisiana in her 1989 Mercury Cougar. A 1990 Dodge Shadow, driven by Janet Broussard ("Ms.Broussard"), was also traveling south, immediately ahead of Ms. Gourley's vehicle. Ms. Broussard, who was insured by Prudential, drifted into the path of an eighteen-wheeler traveling in the northbound lane. While Ms. Broussard was able to prevent a head-on collision with the eighteen-wheeler, she was unable to prevent sideswiping the truck. This caused the eighteen wheeler to strike Ms. Gourley's vehicle. As a result of the collision with the eighteen wheeler, Ms. Gourley sustained several injuries, including a fractured ankle, fractured sternum, herniated cervical disk, and vertigo.
Prudential began its investigation on November 6, 1991. Prudential's accident investigation consisted of interviews with Ms. Broussard and Omar Spencer, driver of the eighteen wheeler, and a review of the police accident report. Based upon the information provided, Prudential accepted liability for the accident on December 2, 1991.
On December 20, 1991, Ms. Gourley's attorney contacted Prudential. During this conversation, her attorney verified the nature and extent of Ms. Gourley's injuries. On December 27, 1991, Prudential received a letter which confirmed this conversation and included, as attachments, Ms. Gourley's medical bills and an operative report from her surgeon. The attached information demonstrated that Ms. Gourley's medical bills alone, at that point, totaled $21,680.00. This was $3,320.00 less than the $25,000.00 liability limit for bodily injuries per person. The letter also acknowledged subrogation claims that would need to be addressed with Ms. Gourley's insurer, who had paid the $5,000.00 medical benefit under her policy.
On March 6, 1992, Prudential received a letter from Ms. Gourley's attorney.[1] This letter advised that the attorney would recommend settlement for the $25,000.00 policy limit in return for a release of Ms. Broussard from the action.
When Prudential did not respond to this letter, Ms. Gourley's attorney sent a third letter. Prudential received this letter on March 23.[2] This letter included a demand for payment of the $25,000.00 policy limit *943 within fourteen days of the date of the letter (April 2).
After reading this letter, the adjuster sought authority to settle this claim. The adjuster acknowledged that, even though she took the terms of the demand letter seriously, she did not seek to expedite the process for securing authority to settle this claim or contact Ms. Gourley's attorney. Further, she acknowledged that, despite quickly admitting liability for the accident and her early awareness that Ms. Gourley's injuries would very likely expose Ms. Broussard to damages in excess of her policy's liability limits, she had never before initiated the process of attempting to settle for the policy limits. Also, Ms. Broussard was never informed that Ms. Gourley's injuries could exceed her policy's liability limits, exposing her to responsibility for payment of any damages in excess of the policy limits.
When Prudential failed to respond by the deadline given in the March 19 letter, Ms. Gourley and her husband filed a petition for damages. This petition named, among others, Prudential and Ms. Broussard as defendants. The Gourleys filed several supplemental and amending petitions, one of which alleged that Prudential's failure to settle for the policy limits violated La. R.S. 22:1220.
Subsequently, Ms. Broussard filed a bankruptcy petition on August 31, 1994. The appellant, as trustee for the estate of Ms. Broussard, filed a Petition for Intervention on March 13, 1996. This petition alleged that Prudential's failure to settle within policy limits, along with its failure to advise Ms. Broussard of the possibility of damages in excess of the policy limits, was both an arbitrary and capricious failure to fulfill its fiduciary duty toward Ms. Broussard and a violation of La. R.S. 22:1220. Accordingly, the petition sought to hold Prudential liable for any damages in excess of $25,000.00 that may be awarded to the Gourleys.
A Notice of Discharge and Injunction was filed on behalf of Ms. Broussard, pursuant to 11 U.S.C. § 524(A)(2), on August 29, 1996. The trial court issued an order staying actions against Ms. Broussard, individually, on December 9, 1996. Subsequently, the Gourleys amended their petition for damages, asserting their right to damages against Ms. Broussard's estate.
The court held a bench trial on the Gourleys' petition for damages on June 24, 1997. The court issued a judgment for damages in the amount of $144,990.46. This was subject to a credit of $25,000.00, which Prudential deposited into the court registry prior to trial. This left an excess judgment of $119,990.46 for which Ms. Broussard's estate was responsible. The Gourleys then moved to dismiss their La. R.S. 22:1220 claim against Prudential. Judgment in accordance with the court's verdict was signed on June 25, 1997.
The court held a jury trial on the merits of the petition for intervention. After appellant presented its case, appellee moved for a directed verdict. The court granted a directed verdict on the La. R.S. 22:1220 claim, reserving to the appellant and presenting to the jury the question of bad faith excess judgment liability. The jury, using special verdict forms, returned a verdict finding appellee's failure to settle breached its duty to Ms. Broussard, subjecting her to liability in excess of policy limits. The jury, however, limited its damage award to $26,000.00. Prudential received a credit for the $25,000.00 which had been placed into the court registry. Judgment based upon the both the directed verdict and the jury's verdict was signed on October 9, 1997.
Appellant filed a timely motion for judgment notwithstanding the verdict (JNOV) and motion for new trial, which were heard on November 17, 1997. Both motions were limited to the issue of damages awarded by the jury. The trial court issued an order denying both motions on the same day. Judgment based upon the court's decision was signed on December 8, 1997.
*944 Ms. Broussard's estate has appealed the trial court's denial of its JNOV motion, alleging that an insurer's liability for an excess judgment against its insured requires a damage award equaling the damages in excess of the insurance policy limits. Prudential answered the appeal, assigning error to the jury's finding of liability, as well as several jury instructions to which it timely objected during trial.

DISCUSSION

Excess Judgment Liability
Courts have consistently noted that an insurer's excess judgment liability is inherently a question of fact. Smith v. Audubon Insurance Company, 95-2057, pp. 7-8 (La.9/5/96); 679 So.2d 372, 376-377; Cousins v. State Farm Mutual Automobile Insurance Company, 294 So.2d 272, 275 (La. App. 1st Cir.1973), writ denied, 296 So.2d 837 (La.1974), A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong but whether the factfinder's conclusion was a reasonable one absent manifest error. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Where the trier of fact has a choice between more than one reasonable view of the evidence, his choice of one or the other of these cannot be wrong. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 8 (La.7/1/96); 696 So.2d 551, 556.
A liability insurer, in the absence of bad faith, is generally free to settle or to litigate at its own discretion, without liability to its insured for a judgment in excess of the policy limits. Smith, 95-2057 at 7-9; 679 So.2d at 376-377. However, a liability insurer is the representative of the interests of its insured, and the insurer, when handling claims, must carefully consider not only its own self-interest, but also its insured's interest so as to protect the insured from exposure to excess liability. Smith, 95-2057 at 7-8; 679 So.2d at 376.
In fact, this court has stated that "[t]he insurer is the champion of its insured's interests. The interests of the insured are paramount to those of the insurer, and the insurer may not gamble with the funds and resources of its policyholders." Maryland Casualty Company v. Dixie Insurance Company, 622 So.2d 698, 701 (La.App. 1st Cir.), reh'g granted in part on other grounds, 622 So.2d 704, writ denied, 629 So.2d 1138 (La.1993) (citing Cousins v. State Farm Mutual Automobile Insurance Company, 294 So.2d 272, 275 (La.App. 1st Cir.), writ denied, 296 So.2d 837 (La.1974)). As such, a liability insurer owes its insured the duty to act in good faith and to deal fairly in handling claims. Smith, 95-2057 at 8; 679 So.2d at 376. An insurer, as a professional defender of lawsuits, is held to a higher standard than an unskilled practitioner, and what may be neglect on the part of the latter may well constitute bad faith on the part of the insurer. Maryland, 622 So.2d at 701; Keith v. Comco Insurance Company, 574 So.2d 1270, 1277 (La.App. 2nd Cir.), writ denied, 577 So.2d 16 (La.1991).
The appellant's petition for intervention alleged that appellee's actions violated La. R.S. 22:1220, which imposes an affirmative duty on the insurer to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant or both. This court has explained that:
[p]rior to the enactment of this statute, it was the jurisprudence of this state that the insurer owed to its insured a duty to act in good faith and to deal fairly when settling claims Holtzclaw v. Falco, Inc., 355 So.2d 1279 (La.1977) (on rehearing). Thus, the first sentence of La. R.S. 22:1220, which provides that the insurer owes to his insured a duty of good faith and fair dealing, simply codified existing law. *945 General Accident Insurance Company v. Watson, 610 So.2d 881 (La.App. 1st Cir.1992), writ denied, 612 So.2d 64 (La. 1993).
Rusch v. Cook, 619 So.2d 122, 124 (La.App. 1st Cir.), writ denied, 625 So.2d 1043 (La. 1993). Courts have long held that this duty, arising from a fiduciary relationship established by the insurance contract, can subject insurers to liability for an excess judgment when the insurer fails to deal in good faith with a claim against its insured. See Smith, 95-2057 at 8-9; 679 So.2d at 376-377 (citing intermediate state court and federal court decisions that have held insurers liable for excess judgments against an insured). As such, a cause of action for an insured against his insurer for dealing in bad faith when handling a claim does not rest solely on this statute. Smith v. Audubon Insurance Company, 94-1571, p. 5 (La.App. 3rd Cir.5/3/95); 656 So.2d 11, 14, writ granted, 95-2057 (La.11/17/95); 663 So.2d 724, rev'd on other grounds, 95-2057 (La.9/5/96); 679 So.2d 372.
It is true that failure to settle a claim for serious injuries within the policy limits is not, in itself, proof of bad faith. Smith, 95-2057 at 9; 679 So.2d at 377. This court has set forth six factors to be considered in determining whether an insurer acted in bad faith: (1) probability of the insured's liability, (2) the adequacy of the insurer's investigation of the claim, (3) the extent of damages recoverable in excess of policy coverage, (4) the rejection of offers in settlement after trial, (5) the extent of the insured's exposure as compared to that of the insurer, and (6) the nondisclosure of information between the insurer and insured. Cousins, 294 So.2d at 275.
In consideration of the Cousins factors, we do not find the jury's verdict, holding Prudential liable for the excess judgment against the appellant, clearly wrong. The record provides ample support for the reasonableness of a finding of liability.
There was little question about Ms. Broussard's liability for the accident. Prudential determined Ms. Broussard's liability early in its investigation. In fact, Ms. Broussard acknowledged her liability during her interview three days after the accident. Prudential needed only two sources to verify this, and admitted liability less than one month after the accident.
The jury could reasonably find that Prudential had been able to conduct an adequate investigation in this matter and determine that a substantial amount of damages in excess of policy coverage was recoverable in this matter. Prudential's adjuster possessed little or no doubt or suspicion regarding either the appropriateness of the bills submitted by Ms. Gourley or the possibility that her damages could easily exceed the policy limits. In fact, the adjuster acknowledged that she never conducted follow-up regarding the medical bills, which were already over $21,000.00 less than two months after the surgery. Further, she acknowledged that, from her experience as an adjuster, general damages could be at least $10,000.00 in situations similar to that of Ms. Gourley.
Certainly, the extent of Ms. Broussard's exposure was much greater than that of her insurer. The trial court awarded the Gourleys damages in the amount of $144,990.46. This is $119,990.46 above Prudential's maximum exposure of $25,000.00 under Ms. Broussard's insurance policy
Finally, there is no doubt that Prudential never communicated to Ms. Broussard the possibility that damages in this claim could exceed the policy limits. Courts have long maintained the importance of such a disclosure, in order to provide the insured an opportunity to provide input that may protect him or her from personal liability exposure. The importance of such input, which may offer information persuading an insurer to settle within policy limits, is especially apparent here, where the insured was exposed to damages of $119,990.46 greater than the policy limits *946 and, after appellants' suit, filed bankruptcy in order to protect her few assets.
Appellee essentially argues two points. First, appellee suggests that, because it did not reject a settlement offer after suit was filed, one of the Cousins factors was not met, and, therefore, it cannot be held liable for the excess judgment in this case. Courts have never held that an insured must provide evidence establishing each of the Cousins factors. In fact, courts have found insurers liable for excess judgments where only one of those factors was established, especially when the insurer failed to keep its insured informed. Trahan v. Central Mutual Insurance Company, 219 So.2d 187 (La.App. 3d Cir.), writ denied, 254 La. 12, 222 So.2d 66 (1969).
Secondly, appellee suggests that resolution of the subrogation claim precluded an attempt to settle. However, this court has held that, in instances where an insurer should have taken more proactive measures, an insurer may not rely upon a subrogation issue to reverse a judgment of liability for an excess judgment. Fertitta v. Allstate Insurance Company, 439 So.2d 531, 534 (La.App. 1st Cir.1983), amended on other grounds and aff'd, 462 So.2d 159 (La.1985). In Fertitta, as in this case, there was little doubt about the insured's liability. Fertitta explains that, in such instances, an insurer must consider the insured's potential excess exposure. Id.
Thus, we find no merit in appellee's assignment of error regarding the trial court's judgment finding it liable for the excess judgment against Ms. Broussard.

Jury Instructions
In considering an argument of improper jury instructions, courts should consider the charges in their entirety and determine if they adequately provide the correct principles of law applicable to the issues as framed by the pleadings, thereby providing adequate guidelines for the jury. Clark v. Jesuit High School of New Orleans, 96-1307 (La.App. 4th Cir.12/27/96); 686 So.2d 998, 1002-1003; Dupuy v. Rodriguez, 620 So.2d 397, 399 (La.App. 1st Cir.1993), writ denied, 629 So.2d 352 (La. 1993). This requires a two prong inquiry(1) did the charge contain an error, and (2) if so, was the error so prejudicial as to prevent the jury from reaching a verdict based on the law and facts of the case? Young v. Logue, 94-0585, p. 28 (La.App. 4th Cir.5/16/95); 660 So.2d 32, 52, writs denied, 95-2575, 95-2585, 95-2597 (La.12/15/95); 664 So.2d 443, 444.
The court finds no error in the jury instructions. A review of the entirety of the charges reveals that they closely follow the language discussed above, regarding an insurer's liability for an excess judgment against its insured. Parties are not entitled to the specific jury instructions requested, merely that jury instructions provide the applicable principles of law. See Clark, 96-1307 at 7; 686 So.2d at 1002-1003. As the trial court granted a directed verdict on the question of liability under La. R.S. 22:1220, the court properly excluded instructions regarding time frames allowed under this statute.
Accordingly, we find no merit in appellee's assignments of error regarding the jury instructions.

Damages
We find the trial court's award of damages, less than the excess judgment against Ms. Broussard, to be erroneous. The petition filed by appellant alleges liability for a judgment in excess of the policy limits. Courts have always construed such actions as an attempt to recover the amount of the excess judgment. In fact, this court has not located one case in which an insurer was found liable for an excess judgment but paid an amount of damages that was less than either the excess judgment or the entire portion of an excess judgment for which an insured was liable to a second insurance company. See, e.g., Parich v. State Farm Mutual Automobile Insurance Company, 919 F.2d 906 (5th Cir.1990), cert. denied, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991); Maryland, 622 So.2d at 698; *947 Keith, 574 So.2d at 1270; Roy v. Glaude, 494 So.2d 1243 (La.App. 3rd Cir.1986); Hodge v. American Fidelity Fire Insurance Company, 486 So.2d 233 (La.App. 3rd Cir.), writ denied, 489 So.2d 917 (La. 1986); Fertitta, 439 So.2d at 531; Domangue v. Henry, 394 So.2d 638 (La.App. 1st Cir.1980), writ denied, 399 So.2d 602 (La.1981).
The liability policy limit was $25,000.00 and the excess judgment was $144,990.46. Thus, damages, in the event of a finding of liability, were easily quantifiable as $119,990.46.

CONCLUSION
Therefore, because the record contains a reasonable factual basis for the jury's conclusion, we affirm the judgment of the trial court finding appellee liable for an excess judgment against appellant. However, we amend the judgment of the trial court regarding damages, and increase appellant's damages to the sum of $118,990.46 ($119,990.46, less the $1,000.00 above the policy limit awarded by the jury) plus judicial interest from the date of judicial demand. Costs of this appeal are assessed to appellee.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] It is unclear when Robin Moore, Prudential adjuster, read the letter dated March 4, 1992. Ms. Moore's testimony indicates that she did not review the letter until April. It is clear, however, that Prudential's claims office received the letter March 6, 1992. Further, Ms. Moore's testimony did explain that, under office procedures, her mail would have been forwarded to her after being date-stamped by the mailroom.
[2] Again, it is unclear when Ms. Moore read the letter. The letter was mailed on March 19, 1992, and the return receipt card indicates that Prudential received the letter on March 23, 1992. Ms. Moore did not recall reading the letter until March 27, 1992.