374 So.2d 685 (1979)
Marion R. SMITH
v.
Dr. and Mrs. Fernand J. TIBLIER.
No. 9963.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 1979.
Rehearing Denied June 11, 1979.
Concurring Opinion September 21, 1979.
Writ Refused September 18, 1979.
*687 Fiasconaro & Fiasconaro, Joseph A. Fiasconaro, Jr., New Orleans, for plaintiff-appellant.
Sidney M. Bach, Gerald D. Wasserman, New Orleans, for defendants-appellees.
Morton H. Katz, Avram C. Herman, New Orleans, for intervenor-appellant.
Before LEMMON, GULOTTA and STOULIG, JJ.
GULOTTA, Judge.
A jury awarded to a seller of real property $500.00 in damages and $1,000.00 in attorney's fees plus costs in a case where purchasers signed a standard form real estate Agreement to Purchase property for the sum of $120,000.00 but refused to place the $12,000.00 deposit and refused to take title. The seller accepted the offer on the same day that the offer was made.
An intervention filed by the real estate agent for a commission and attorney's fees, as well as the purchasers' third party and reconventional demand against the realtor were dismissed in the trial court. Plaintiff-seller and intervenor appeal.
Because of the purchasers' failure to place a $12,000.00 deposit with seller's agent, plaintiff-seller seeks to invoke the following provisions of the Agreement to Purchase:
"... and failure to do so (place the deposit) shall not void this agreement but shall be considered as a breach thereof and seller shall have the right, at his option, to demand liquidated damages equal to the amount of the deposit or specific performance, and purchaser shall, in either event, be liable for agent's commission, attorney's fees and costs."
Plaintiff, seeking the $12,000.00 stipulated liquidated damages and increased attorney's fees, further relies on the following provisions of the agreement:
"In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance."
Intervenor's claim for a commission and attorney's fees is based upon the recitation in the agreement that the "... commission is earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured." Intervenor relies also on the following:
"Either party hereto who fails, for any reasons whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent's commission and all reasonable attorney's fees and costs incurred by the other party, and/or agent in enforcing their respective rights."
We increase the amount of the damages to plaintiff-seller to the sum of $12,000.00 and increase the attorney's fees to the seller to the sum of $2,000.00. Intervenor is awarded an agent's commission in the sum of $6,800.00 and $1,000.00 in attorney's fees.
On November 21, 1976, Dr. and Mrs. Fernand J. Tiblier offered to purchase from plaintiff a residence in Orleans Parish for the sum of $120,000.00. The sale was conditioned upon the ability of the purchaser to borrow $96,000.00 at a stipulated interest over a twenty year term. The agreement obligated the purchasers to post a $12,000.00 deposit at the time of acceptance (November 21st) and further obligated the purchasers to make a good faith application to obtain a loan not later than ten (10) days after acceptance of the offer. On November 22, 1976 purchasers notified the seller of their intention not to accept title and of their desire to withdraw from the agreement. The seller refused to acquiesce and this suit followed.
Purchasers argue that because they were so intoxicated from alcoholic beverages at the time they signed the offer to purchase they were suffering from a "temporary *688 derangement of the intellect", and therefore, were incapable of entering into a valid agreement. The jury rejected their argument and we cannot say the jury erred.
It is clear from the testimony of the Tibliers, as well as the testimony of the real estate agent and sister and brother-in-law of the Tibliers, that the purchasers had been drinking intoxicating liquors on the afternoon the agreement was signed. Mrs. Tiblier stated that she had consumed approximately ten or eleven drinks between 1:00 p. m. and 8:00 p. m. on the day of the signing; that her "brain was dull"; that although she did not have "complete control", she did have "control" over herself; and that she was walking around. Mrs. Tiblier indicated further that she was not completely out of control but she certainly was not sober. This witness further added that she was told by the real estate agent that the offer was only a "test offer" without any hope of acceptance by the seller.
It is clear also from her testimony that Mrs. Tiblier was aware of the import of an offer to purchase. She stated that she had been employed as a teller at a homestead for a couple of years prior to her marriage.
Dr. Tiblier testified that on any Sunday afternoon he had a habit of consuming approximately twenty or twenty-five alcoholic beverages. (The agreement was signed on a Sunday evening.) He stated that at the time that he signed the Agreement to Purchase he was "bombed out"; that he had driven his automobile on the day of the signing and apparently had not lost all reason but had some control over his "functions". Dr. Tiblier further testified that he had purchased two other pieces of real estate on prior occasions and that he was a licensed real estate agent. He inferred, however, that because of his taking prescribed medication, together with the alcoholic beverages, his thinking was impaired to the extent that he did not know what he was doing when he signed the agreement.
Mrs. Tiblier's sister, who was present at the Tibliers' home on the afternoon the document was signed, testified that Dr. and Mrs. Tiblier were "drunk". She added that their eyes were glassy and their speech slurry. Mrs. Tiblier's brother-in-law generally corroborated the fact that the Tibliers were drinking on that afternoon, however, he testified that Dr. Tiblier had driven his automobile on that afternoon without incident.
The real estate agent who had obtained the offer to purchase was at the purchasers' home on the Sunday afternoon that the agreement was signed. She stated that she had been with the purchasers for approximately three hours in their home on the afternoon of the signing and the Tibliers did not give any indication of being intoxicated.
Whether or not the Tibliers were so intoxicated as to be incapable of contracting is a question of fact to be determined by a jury or judge. In our case the jury answered affirmatively to the interrogatory that the Tibliers "were legally capable of contracting, and their consent was legally given to the contract to purchase the property." From our consideration of the evidence we cannot say that the jury manifestly erred in its factual conclusion. Apparently, more weight was given to the testimony of the real estate agent than to the self serving testimony of the Tibliers and their relatives.
Further, we find no merit to the defendants' claim that because they were told by the real estate agent that the offer to purchase was a "test offer" which would not be accepted they were improperly induced by the agent to make the offer, and therefore, cannot be bound by its terms. Dr. and Mrs. Tiblier are well educated people with experience in real estate transactions.[1] Prior to this agreement to purchase defendants had *689 acquired two separate pieces of real property. Dr. Tiblier was a licensed real estate agent and Mrs. Tiblier had worked for some time in a homestead. Accordingly, we cannot say the jury erred in finding that the Tibliers were legally capable of contracting and their consent was legally given.
By the terms of the agreement, purchasers' failure to post the $12,000.00 deposit allows the seller, at her option, to demand forfeiture of the deposit. The jury, after concluding that the agreement was valid and that the purchasers failed to post the deposit, was required to award to plaintiff the amount of the deposit. No discretion is placed in the jury in this case to reduce the amount of liquidated damages to the sum of $500.00. Under the circumstances, the award to plaintiff for liquidated damages must be the sum of $12,000.00.
Defendants argue, however, that assuming the interrogatory allowing discretion with the jury is erroneous, this Court should not increase the award to plaintiff but the matter should be remanded to the trial court. According to defendants, absent the erroneous interrogatory, the jury when confronted with a choice of awarding to plaintiff the $12,000.00 in liquidated damages, or no award, the jury reasonably could have chosen to make no award. Defendants claim that this matter is not one which allows the reviewing court to disregard the effect that the erroneous interrogatory had on the jury and to decide this matter on the records in this Court.
Defendants further inferentially argue that because plaintiff failed to object to the erroneous interrogatory, which allowed the jury discretion to award an amount less than the stipulated liquidated damages, plaintiff is not entitled to the $12,000.00 amount claimed plus attorney's fees. Relying on LSA-C.C.P. art. 1793[2] defendants claim that an interrogatory to the jury is the same as an instruction to the jury and because plaintiff failed to object to the interrogatory which allowed the jury discretion in the amount of the award, plaintiff cannot now be heard to complain that the erroneous instruction resulted in an inadequate award.
Considering these two contentions in the order in which they are presented, we reject defendants' argument for a remand. The entire record is before this Court and according to the mandate of the Louisiana Supreme Court in Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975) and this Court's expression in Woods v. Cumis Ins. Society, Inc., 364 So.2d 213 (La.App. 4th Cir. 1978) and Corceller v. Brooks, 347 So.2d 274 (La.App. 4th Cir. 1977), writ denied, 350 So.2d 1223 (La.1977), judicial economy requires that the matter be disposed of in this court. Under the circumstances, defendants are not entitled to the remand sought.
We find no merit further to defendants' contention that failure by plaintiff to object to the interrogatory constitutes a waiver of that objection. In the first place, LSA-C.C.P. 1793 concerns waiver of objections to jury instructions only and not to jury interrogatories. Without legislative action we cannot expand the language in this Code of Civil Procedure article to include jury interrogatories. Assuming that we include jury interrogatories within the purview of LSA-C.C.P. 1793, there exists nothing in the record to indicate that the interrogatories were submitted to the attorneys for the parties in interest prior to submission to the jury. The record does not reflect that plaintiff either made any input on the interrogatories submitted or was afforded an opportunity *690 to object. Under the circumstances, we cannot say that plaintiff's failure to object to the erroneous interrogatory constituted a waiver.
Because we conclude the seller is entitled to recover the stipulated liquidated damages, we conclude the seller is entitled to recover attorney's fees as provided for in the agreement. We find no abuse of the jury's discretion awarding $1,000.00 in attorney's fees to seller's attorney but increase that amount to $2,000.00 to include the attorney's efforts at the appellate level.
Finally, we turn to a consideration of the jury's rejection of the realtor's commission and attorney's fees. It is true, as pointed out by purchasers, that the agreement provides the commission is earned by the agent when the agreement is signed by both parties and "when the mortgage loan, if any, has been secured." It is true also, and not disputed, that the mortgage loan had never been obtained. Clearly, the suspensive condition did not occur. In that instance the obligation does not take effect. See Civil Code Article 2021. However, the happening of the suspensive condition, i. e., the securing of the mortgage loan, was prevented by the failure of the purchaser to obtain the loan. The condition is considered fulfilled when the fulfillment has been prevented by the party bound to perform the condition. Civil Code Article 2040. Because the suspensive condition was not fulfilled by reason of the purchasers' failure to make a good faith application to secure the loan, we conclude the intervenor agent is entitled to the stipulated commission in the amount of $6,800.00[3] plus attorney's fees in the amount of $1,000.00.[4]
Having so concluded, we annul, rescind, set aside and recast the judgment.
Judgment is now rendered in favor of Marion R. Smith and against Dr. & Mrs. Fernand J. Tiblier in the sum of $12,000.00 together with attorney's fees in the sum of $2,000.00, which includes the $1,000.00 attorney's fee award by the trial judge.
Judgment is further rendered in favor of intervenor, Latter and Blum, Inc. and against Dr. and Mrs. Fernand J. Tiblier in the sum of $6,800.00, the stipulated agent's commission, together with attorney's fees in the sum of $1,000.00.
Interest is to be computed from date of judicial demand until paid. Costs to be paid by purchasers.
JUDGMENT ANNULLED, RESCINED, SET ASIDE AND RECAST.
LEMMON, Judge, concurs and assigns reasons.
As to the failure to object to the special interrogatories I agree that there should not be a judicial extension of C.C.P. art. 1793, which prohibits an assignment of error based on the giving or failing to give a jury instruction which was not objected to timely.
The purpose of C.C.P. art. 1793 is to require that the parties object to the giving or the failure to give a jury instruction at a time when the trial court can correct any error which is timely brought by counsel for the parties to the attention of the court, and the penalty for failing to object timely is designed to achieve this purpose. However, C.C.P. art. 1793, which is taken from Federal Rule 51, conflicts to some extent with C.C.P. art. 2164, which authorizes an appellate court to render any judgment which is just, legal and proper upon the record on appeal.
In other jurisdictions where there is no appellate review of fact, a substantial number *691 of appeals are decided by simply reviewing objections to jury charges. However, Louisiana does have a constitutional provision for appellate review of fact, and this provision is consistent with C.C.P. art. 2164. Because C.C.P. art. 1793 conflicts to some extent with the theory of appellate review of fact and with C.C.P. art. 2164, and because jury trials are still the exceptions rather than the rules in Louisiana trial procedure, any extension of C.C.P. art. 1793 should be made expressly by the legislature and not by analogy by the courts.
NOTES
[1] In Tiblier v. Family Real Estate, Inc., 195 So.2d 432 (La.App. 4th Cir. 1967) this court reviewed a similar claim of Tiblier that he was induced into making a purchase on false representation of the selling agent. This court rejected his argument stating that Mr. Tiblier "... a successful practitioner, and one experienced in the purchase of real estate, could hardly have been misled ..."
[2] LSA-C.C.P. art. 1793 reads as follows:

"Art. 1793. Instruction to jury; objections. At the close of the evidence or at an earlier time during the trial as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury.
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
[3] The agreement provides for six percent (6%) commission on the first $100,000.00 and four percent (4%) on the balance of the purchase price.
[4] Received into evidence was the testimony of the intervenor's attorney and itemized statements in connection with legal services rendered in this lawsuit. Through the end of 1977, 15.25 hours, at a rate of $50.00 per hour, were billed, totalling $787.50, plus $142.00 in costs. Between January 1, 1978 and April 13, 1978 an additional 36 hours at the same rate had been worked, plus $423.50 out of pocket expenses, totalling $2,223.50. And since April 13, 1978 approximately twenty more hours had been devoted to this suit.