881 So.2d 796 (2004)
Clive HOFFMAN, Jr. and Gloria Hoffmann
v.
PARACELSUS ELMWOOD MEDICAL CENTER, INC. (d/b/a Elmwood Medical Center), Dr. Ruary O'Connell and Dr. James McCullough.
No. 2003-CA-0659.
Court of Appeal of Louisiana, Fourth Circuit.
September 1, 2004.
Rehearing Denied September 30, 2004.
*798 Matthew F. Block, Law Offices of Jerald P. Block, Thibodaux, Counsel for Plaintiffs/Appellants.
Gregory G. Gremillion, Ken D. Brown, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Gretna, Counsel for Defendant/Appellee, Counsel for Elmwood Medical Center.
Peter E. Sperling, Nairda T. Colon, Gary L. Hanes, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, Counsel for Defendant/Appellee Counsel for Dr. Ruary C. O'Connell.
Court composed of Judge PATRICIA R. MURRAY, Judge JAMES F. McKAY III, Judge TERRI F. LOVE, Judge MAX N. TOBIAS Jr., Judge DAVID S. GORBATY.
LOVE, J.
This appeal arises from a medical malpractice suit tried before a jury. Plaintiffs, Clive and Gloria Hoffman, filed suit claiming the defendants, Dr. James McCullough, Dr. Ruary O'Connell, and Paracelsus Elmwood Medical Center, Inc. (d/b/a Elmwood Medical Center) committed medical malpractice resulting in the death of their son, Thaddeus Hoffman. The jury, deadlocked as to the other two defendants, returned a verdict releasing Dr. McCullough. After the trial court amended the special verdict form, the jury returned a verdict releasing Dr. O'Connell, but remained deadlocked as to Elmwood. The trial court subsequently granted Elmwood's motion to dismiss and denied the plaintiffs' motion for a new trial. Plaintiffs appeal the judgment rendered as it relates to Dr. O'Connell and Elmwood. For the following reasons we vacate the judgment of the trial court and remand for a new trial.

FACTS AND PROCEDURAL HISTORY
On February 26, 1996, Thaddeus Hoffman ("Thad"), son of Clive and Gloria Hoffman, underwent a procedure at Elmwood Medical Center ("Elmwood") called Gastric stapling Roux-en-Y Gastrojejunostomy ("gastric bypass"), performed by Dr. Ruary O'Connell ("Dr. O'Connell"), the director of the Surgilite program at Elmwood Medical Center. Dr. O'Connell avers that during an office visit on November 22, 1995, he was informed of Thad's struggle with uncontrolled obesity and a number of related symptoms. After examining Thad, obtaining a medical history, and performing tests, Dr. O'Connell diagnosed Thad with "superobesity." Dr. O'Connell *799 further concluded that, at the age of 25, the height of 5'9" and the weight of 534 pounds, Thad met the criteria for surgical intervention. Dr. O'Connell avers that he discussed with Thad in detail, the risks, complications, and alternatives of the surgery in addition to supplying Thad with educational videotape and written material specific to the proposed procedure. Dr. O'Connell required that Thad undergo a psychological evaluation for emotional and mental stability in relation to the procedure. On January 17, 1996, Bayou Oaks Pavilion performed the evaluation and recommended to Dr. O'Connell that Thad was well  informed about the risks and complications of the procedure.
Dr. O'Connell arranged for Dr. James McCullough ("Dr. McCullough"), a pulmonologist, to perform a post-surgery respiratory evaluation, to extubate Thad and to perform Thad's postoperative ventilatory management. Thad underwent a preoperative assessment at Elmwood Medical Center, at which point Thad was evaluated for additional health difficulties he may have had which could present complications during or after surgery. Thad was diagnosed as having hypoxia, which is low blood oxygen; dyspnea, which results in shortness of breath or air hunger; and obesity hypoventilation. Although one test indicated that the oxygen level in Thad's blood was moderately low, Dr. McCullough determined that normal oxygen saturation was noted on the blood gas analysis. Defendants aver that all remaining laboratory work returned within normal limits. Thad was subjected to an EKG, which showed normal heart rhythm. After all testing, Dr. McCullough determined that Thad was a good candidate for surgery and Thad signed all appropriate consent forms, indicating his understanding of the procedure, including possible risks, and his desire to proceed.
Defendants further aver that the procedure took place without incident on February 26, 1996 at which time Thad was placed in the recovery area in stable condition. Dr. O'Connell contends that, pursuant to protocol, he ordered the use of a pulse oximeter monitoring device, the delivery of oxygen through nasal tubing, heparin, compression stockings, timely mobilization to chair, incentive spirometry, and patient education for turn, cough and deep breathing techniques. Defendants further contend that Thad's recovery progressed. Dr. McCullough examined Thad on a couple of occasions during the first post-surgical day, while Dr. O'Connell followed Thad closely throughout the remainder of his hospitalization. Dr. O'Connell contends that due to Thad's improved condition, on February 28, 1996, he ordered that the use of oxygen, compression stockings, and the continuous pulse oximeter be discontinued.
During the process of weaning Thad off the respirator, Dr. McCullough diagnosed Thad as having an additional condition called restrictive lung disease resulting in restricted ability to move air supplying oxygen across the lungs. However, defendants also aver that Thad's arterial blood gas reports and pulse oximeter were within normal limits after the removal. Plaintiffs aver that Thad began to complain to Dr. O'Connell that he was having difficulty breathing and that Thad's family informed the nursing staff at Elmwood. Plaintiffs further aver that Thad continued to complain of breathing difficulties and became so anxious that the nursing staff at Elmwood gave him Xanax. However, defendants contend that the hospital records of Thad contain no reports of shortness of breath, and Dr. O'Connell avers that he has no recollection of being informed of such complaints. Dr. O'Connell avers that Thad's vital signs and oxygenation remained strong. Defendants contend that the next day, on February 29, 1996, Thad *800 complained of left shoulder pain and began running an elevated temperature. Although the fever responded to medications, the pains remained. Dr. O'Connell avers that an esophram, which detects leakage or tearing, was ordered and the test results indicated no perforation or leakage.
It is uncontroverted that on February 29, 1996, the nursing staff at Elmwood assisted Thad into a sitting position so that an egg-crate pad could be placed on his mattress, at which point Thad's eyes suddenly rolled back and he fell onto the bed, in full cardiac arrest. A Code was called and Dr. O'Connell was immediately notified. After numerous attempts to resuscitate Thad went unsuccessful, the Code event was terminated and Thad was pronounced dead. Dr. O'Connell concluded that Thad's death was triggered by an electrical cardiac disturbance involving a lethal heart arrhythmia.
On May 21, 1999, plaintiffs, Clive and Gloria Hoffman, filed suit claiming the defendants, Dr. McCullough, Dr. O'Connell, and Elmwood, committed medical malpractice resulting in the death of their son, Thad. After a three-week trial on the merits, the trial court handed down its instructions and retired the jury to deliberate. The following afternoon, the jury sent the judge a note indicating they were deadlocked. The note indicated the jury had reached a verdict in favor of Dr. McCullough releasing him from liability; however they had not reached a verdict as to the remaining two defendants. The following morning, the judge called the jury and all parties to chambers. The trial judge questioned the jury as to the instructions that were handed down before they retired to deliberate:
Court: I got your note that you sent yesterday afternoon indicating that you were deadlocked. Is there anything I can do to help you?
Jury: Yes.
Court: What if I give you additional questions or something like that? Would that help you?
Jury: Yes.
Court: Okay, okay.
Weigel: Your Honor, may we approach the bench before you give any instructions?
Court: No. I figured this out all by myself. I instructed you that when nine of you agree, you had reached a verdict, and based on the interrogatories that were submitted yesterday, it appears to me that you have reached a verdict on at least one of the defendants. Does everybody have a copy?
Weigel: Yes, your Honor.
Court: On the second set that I've submitted to you, the first question, instead of, "Did Elmwood nurses breach  Did Elmwood Medical Center's nurses breach the standard of care for nurses in hospitals in its medical care of Thad Hoffman," the question I'm propounding is, "Did plaintiff prove by a preponderance of the evidence that Elmwood Medical Center's nurses breached the standard of care for nurses in hospitals in its medical care of Thad Hoffman?" Would that help?
Juror: Yes.
Court: Okay. So, we will send you back to deliberation with the jury interrogatories and give you some time to figure those out. If you have any questions, let me know. When you are finished, let me know.[1]
*801 After the jury retired for deliberations the second time, the trial judge gave oral reasons as to her actions. The court stated,
The reason I did not come back yesterday is because I have never had a jury that's deadlocked, so I had to think of what to do, and then it was obvious that if they were deadlocked and if I was going to release them with that conclusion  But, as to Dr. McCullough there was a decision, so I needed a night to think about what to do.
And, it's my experience that in a judge trial, after that period of deliberation, if I can't decide  what happened or if a standard or a duty was breached, then I give judgment for the defendant because I'm of the opinion that if I don't know at the end of the trial what happened, then plaintiff did not carry its burden of proof, which gave rise for the idea of me giving a new, second set of interrogatories to ask them did plaintiff carry its burden of proof, which also  Well, you have to prove by a preponderance of the evidence that this was done, that it's more likely that it was done than not. And, if they don't  If they're deadlocked, then maybe you didn't carry your burden of proof, which is why I submitted the second interrogatories. If I have to try this thing over as to any defendants, I don't see the harm with this. (emphasis added)
A few hours later, the jury returned with a verdict in favor of Dr. O'Connell releasing him from liability. As to the third defendant, Elmwood, the jury sent a note indicating they were deadlocked and additional time would not help. The trial court read:
COURT: I'm gong to declare that there is a verdict with reference to Drs. O'Connell and McCullough. And, I have to read it.
...First, I'm going to read the first set and the responses. The first set of interrogatories read: "1. Do you find that Elmwood Medical Center's nurses breached the standard of care for nurses in hospitals in its medical care of Thad Hoffman? Yes 6, No. 6.
And, the instruction was  Well, they then went to No. 3. "Do you find that Ruary C. O'Connell, M.D. breached the standard of care in his medical treatment of Thad Hoffman? Yes 5, No. 7."
The court stated:
This morning I gave them a second set of interrogatories, replacing questions 1, 2, 3, and 4, and asking, "Did plaintiff prove by a preponderance of the evidence that Elmwood Medical Center's nurses breached the standard of care for nurses in hospitals in its medical care of Thad Hoffman [sic]? Yes 5, No 7."
The trial court assessed that no vote had been taken by the jury as to question two and began to read the jury's verdict as to question number 3.
COURT: Okay. Thank you.
No. 3: "Did plaintiff prove by a preponderance of the evidence that Ruary C. O'Connell, M.D. breached the standard of care in his medical treatment of Thad Hoffman [sic]?" The answer is, "Yes 2, No 10."
The judge thanked the jury for their service and dismissed them.
Elmwood moved to enter a verdict on their behalf and dismiss them from the *802 suit. The court maintained that she did not believe the plaintiffs proved that the nurses of Elmwood breached the standard of care. The trial court held
The doctor didn't testify the nurses breached  The nurses' testimony  I think according to Louisiana law he could have expounded on that, but his testimony was he was not an expert, and the nurses' testimony was that they did not breach the standard of care....
The trial court granted Elmwood's motion to dismiss. The plaintiffs filed a Motion for New Trial, which was denied. It is from this judgment that the plaintiffs appeal.

LEGAL ANALYSIS
The plaintiffs instituted this appeal against two defendants, Elmwood and Dr. O'Connell. On appeal, Clive and Gloria Hoffman, allege four assignments of error:
(1) The trial court erred by issuing a new set of jury instructions and a new verdict form after the jury announced that the panel members were deadlocked;
(2) The trial court erred when it granted an "involuntary dismissal" to defendant, Elmwood Medical Center, after the jury declared that it was deadlocked on the question of liability for Elmwood;
(3) The trial court erred when it instructed the jury about the proof required for physician malpractice; and
(4) The trial court erred when it instructed the jury that the testimony of the defendants, as the treating physicians, should be given more weight than that of other physician experts.

Standard of Review
The well-established standard of appellate review dictates that this court not overturn a judgment of a lower court absent an error of law or finding of fact that is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993).

FIRST ASSIGNMENT OF ERROR
In their first assignment of error, plaintiffs allege that the trial court erred by issuing a new verdict form and a new set of jury instructions after the jury announced that the panel members were deadlocked. Discussion of the issue as to whether the trial court erred in issuing a new verdict form pretermits any discussion as it relates to the alleged new jury instructions.
There is a distinct difference between the verdict form and jury instructions. Pursuant to La. C.C.P. art. 1792, a jury instruction is the law applicable to any issue in the case. La. C.C.P. art. 1796 grants the trial court authority to give additional jury instructions. La. C.C.P. art. 1792, addresses, in pertinent part, the charge to the jury:
A. At any time during the trial, the court may instruct the jury on the law applicable to any issue in the case.
B. After the trial of the case and the presentation of all the evidence and arguments, the court shall instruct the jurors on the law applicable to the cause submitted to them. The court shall reduce such instructions to writing.
However, when the court submits a verdict form, it may either be a general verdict form or a special verdict form. A general verdict form is one whereby a jury *803 renders a finding in the terms of the issue, or all the issues, referred to them; it generally pronounces upon all of the issues presented, either in favor of the plaintiff or defendant. A special verdict form, however, permits the court to submit to the jury the duty to render special findings of the facts of the case, leaving to the court the application of the law to the facts thus found. Official Revision Comments to former article 1811. La. C.C.P. art. 1812 on Special Verdicts is patterned after Federal Rules of Civil Procedure Rule 49. The court prepares the special verdict form, which is a compilation of interrogatories, framing the issues to be determined, and the jury returns the form to the court with the vote count, as to each interrogatory. It is a special, written finding upon each issue of fact. La. C.C.P. art. 1812, provides in pertinent part:
A. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon.
In Smith v. Tiblier, we declined to extend the contemporaneous objection requirement to special verdict forms absent expressed authority from the Code of Civil Procedure. Smith v. Tiblier, 374 So.2d 685 (La.App. 4th Cir.1979). We reasoned that without legislative action we cannot expand the language in this Code of Civil Procedure article to include jury interrogatories. Smith, 374 So.2d at 689.
After careful review of the record, we find that the trial court by its own admission propounded the jury with "a second set of interrogatories" which revised the original interrogatories propounded to the jury. The trial court provided that
This morning I gave them [the jury] a second set of interrogatories, replacing Questions 1, 2, 3, and 4...
Question number one (1) was revised from "Did Elmwood nurses breach  Did Elmwood Medical Center's nurses breach the standard of care of Thad Hoffman?" to the propounded revision of "Did plaintiff prove by a preponderance of the evidence that Elmwood Medical Center's nurses breached the standard of care for nurses in hospitals in its medical care of Thad Hoffman?" Further, the trial court changed the question number three (3), from "Do you find that Ruary C. O'Connell, M.D. breached the standard of care in his medical treatment of Thad Hoffman?" to the propounded revision of "Did plaintiffs prove by a preponderance of the evidence that Ruary C. O'Connell, M.D. breached the standard of care in his medical treatment of Thad Hoffman?" We find that the trial court abused its discretion when it rephrased the jury interrogatory during jury deliberations. The change prompted the jury's focus on to the plaintiffs and whether they satisfied their burden of proof. The defendants urge that the jury sought additional instructions from the trial court, allowed under the Code of Civil Procedure. However, the note sent by the jury did not indicate why the jury was deadlocked or what point of law they were confused about. The trial court assumed the jury was unsettled on the plaintiffs' case, and gave interrogatories regarding their burden.
The communication is prohibited under La.Code of Civil Procedure article 1791. La.Code Civ. P. art. 1791 provides:

*804 The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted. (emphasis added)
We further find that by rewording the jury verdict form, the trial court commented on the evidence presented at trial and gave an opinion as to the substance of the plaintiffs' case. The trial court gave an opinion as to what she thought was not proved which is a prohibition of La. C.C.P. art. 1791.
The defendants argue the verdict should be affirmed because the judge gave her reasons for changing the jury verdict form outside of the jury's presence. After the trial judge issued the new verdict form, she stated,
[I]t's my experience that in a judge trial, after the period of deliberation, if I can't decide  what happened or if a standard or a duty was breached, then I give judgment for the defendant because I'm of the opinion that if I don't know at the end of the trial what happened, then plaintiff did not carry its burden. (emphasis added)
The trial court rephrased the interrogatories because she did not believe the plaintiffs established their burden of proof. Although the judge's reasons were given outside of the jury's presence, the statement supports why she made the change on the verdict form and her ultimate goal in making the change. We find that the new verdict form reflects the statement she made after the jury retired. The trial judge commented on the plaintiffs' case by changing the verdict form and not by her explanatory statement to the attorneys.
The trial court is allowed to provide additional jury instructions, however, after careful review of the record, we find that in the case at bar, the trial court did not give additional instructions, but rather the trial court improperly amended the jury verdict form. Therefore, we find that the trial court erred as a matter of law when it issued to the jury a new verdict form, which affected Dr. O'Connell. Discussion of the trial court's issuance of a new set of jury instructions is therefore pretermitted.

SECOND ASSIGNMENT OF ERROR
Hoffman argues the trial court erred when it granted an "involuntary dismissal"[2] to Elmwood after the jury declared that it was deadlocked on the question of liability.
The appellee, Elmwood, asserts that the reference to an involuntary dismissal in the judgment by the trial court was a simple mistake. They aver the trial court intended to grant a judgment notwithstanding the verdict. Elmwood continues stating, "an involuntary dismissal, a directed verdict, and an JNOV are basically the same motions which are simply made at different times ... Thus, the use of the term involuntary dismissal rather than JNOV is simply irrelevant."
La. C.C.P. art. 1672[3] dictates under what circumstances an involuntary dismissal *805 shall be granted. In a jury trial, an involuntary dismissal is only allowed when either the plaintiff, or when both parties fail to appear on the day set for trial. An involuntary dismissal is not available after the case has been sent to the jury. Therefore, procedurally an involuntary dismissal was not available at this stage of a jury trial.
Elmwood's contention that the procedural devices of involuntary dismissal, directed verdict, and JNOV are only distinguished by the time at which the motion is made and therefore the incorrect term used by the trial court is immaterial relies on the First Circuit case of Goza v. Cornwell, 622 So.2d 704, 708 (La.App. 1 Cir.1993). In Goza, the trial court granted a directed verdict after the jury had issued a judgment. The First Circuit opined the motion [for directed verdict] was deemed to be submitted to the jury and the trial court was powerless to grant a motion for directed verdict after that point. Whatever the verdict of the jury is will be the verdict of the court, unless set aside by the judge granting a later filed motion for a judgment notwithstanding the verdict... Goza, 622 So.2d at 708. Under Goza, the trial court in the instant matter did not have the authority to dismiss defendant Elmwood without granting a JNOV and/or motion for new trial.
Although procedurally we have found a basis to reverse the trial court's dismissal of Elmwood, we also find the facts do not support a JNOV. Louisiana Code of Civil Procedure 1811[4] provides *806 the trial court with the authority to grant a JNOV if no verdict was returned. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991). The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion, which is of such quality and weight, that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Id. Additionally, "a trial court may not weigh the evidence, pass on credibility of witnesses or substitute its own judgment for that of the jury" when deciding a motion for JNOV. Boudreaux v. Schwegmann Giant Supermarkets, 585 So.2d 583, 585 (La.App. 4th Cir.1991), citing Hutchinson v. Wal-Mart, 573 So.2d 1148, 1151 (La.App. 1st Cir.1990).
We find that disputed factual issues exist in addition to necessary credibility determinations, therefore we cannot opine the facts and inferences point so strongly in Elmwood's favor that the court believes reasonable men could not have arrived at a contrary verdict. The record shows conflicting testimony of whether Elmwood nurses breached a standard of care. The family states Thad had shortness of breath and the plaintiff's experts testified that shortness of breath would have been resulted after Thad's surgery, yet the nurses of Elmwood testified Thad did not exhibit these symptoms, nor did they have a notation in their chart. We find the trial court erred when it granted an "involuntary dismissal" to Elmwood after the jury declared that it was deadlocked on the question of liability.

New Trial
The Hoffmans argue that a new trial should be granted because credibility issues exist among the witnesses. Plaintiffs further aver, that contrary to defendants' testimony, Thad's family complained of post-operative respiratory difficulty, yet it was not documented in his medical chart.
The defendants request a de novo review if this court finds error. They argue the "error" is neither "substantial" nor "material" to require a remand. They repeatedly state the complete record is before *807 the court and a review of the record will show the plaintiffs' claims are unsupported by documentation.
Under most circumstances, when an appellate court reverses a jury verdict and the record is complete, an independent review is conducted and judgment is rendered on the merit. Wilson v. PNS Stores, Inc., 98-1004, p. 14 (La.App. 4 Cir. 12/16/98), 725 So.2d 66, 73, quoting Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). It has been recognized, however that in some cases, "the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial." Id.; Jones v. Black, 95-2530 (La.6/28/96), 676 So.2d 1067; Glapion v. Bergeaux, XXXX-XXXX, p. 15 (La.App. 4 Cir. 12/11/02), 834 So.2d 1141, 1150.
After careful review of the record, we find that the weight of the evidence is so nearly equal that a firsthand view of the witnesses is essential to a fair resolution of the issues. Issues of credibility exist between fact and expert witnesses. Thaddeus Hoffman's sister, Candi Fanguy ("Ms. Fanguy"), testified that the family complained of respiratory difficulty on behalf of Thad to the nursing staff at Elmwood. She further testified that she was present in Thad's hospital room, when Thad informed Dr. O'Connell that he couldn't breathe and that he was having trouble breathing. However, Gigi Authement ("Ms. Authement"), a registered nurse employed by Elmwood, testified during cross-examination that she observed that the previous shift logged Thad's pulse rate registered at one hundred forty, which was elevated, but she did not contact Dr. O'Connell to report to him that there was an elevated pulse rate because she believed Thad's elevated heart rate was a result of pain and anxiousness that Thad was experiencing, which can increase the heart rate. She further testified that had a complaint been lodged as to Thad's respiration, the patient would have been assessed to determine if the concern should have been charted and the doctor contacted. The family further testified they observed Thad sweating profusely and he complained of being hot. Although the nurses' chart states Thad was warm and dry, the nurses supplied a box fan in his room.
In a medical malpractice case, the First Circuit reasoned a de novo review could not be conducted because the jury must have the opportunity to make credibility determinations after a full examination of the experts' credentials, qualifications, and background. Adeola v. Kemmerly, XXXX-XXXX (La.App. 1 Cir. 6/21/2002), 822 So.2d 722.
The experts in the case at bar offer opposing opinions as to Thad's cause of death. The plaintiffs' expert, Dr. Feldman, offered an opinion inconsistent with Dr. O'Connell's. Dr. Feldman, a sleep apnea expert, opined sleep related breathing was a major issue in this case and stated Thad's care was not appropriate. He further opined that Thad should have been diagnosed with nocturnal obesity hypoventilation and sleep apnea and cared for appropriately. Pathologist, Dr. Hemelt, agreed in his correlation [comments], stating Thad's likely cause of death was hypoxia secondary to pulmonary atelectasis because both lungs were collapsed and an excess amount of collapse was present in the alveolar spaces of the lungs.
Dr. O'Connell testified he was not notified, nor did he observe any respiratory difficulty and there were no signs of hypercapnic respiratory failure. Dr. O'Connell initially opined that Thad's cause of *808 death was a pulmonary embolus, but after tests revealed a pulmonary embolus could not have occurred he amended his opinion. He then later stated the cause was a sudden cardiac arrest or obesity sudden death syndrome. Dr. O'Connell reviewed the pathologist's report and requested it be changed. Upon Dr. O'Connell's request, the pathologist, Dr. Hemelt, complied and amended the report.
After a thorough reading of the record, we conclude that the jury's verdict was based heavily on credibility determinations made after hearing from the parties and the various witnesses who testified. Faced only with a record and conflicting evidence, we find that resolution depends on a first-hand view of the witnesses and we are therefore convinced that this case must be remanded to the trial court for a new trial on the merits.

THIRD AND FOURTH ASSIGNMENTS OF ERROR
Hoffman also asserts two other assignments of error: failure to give a specific jury charge and instructing the jury that the testimony of the defendants, as the treating physicians, should be given more weight than that of other physician experts. Because we have granted a new trial, we pretermit discussion of these errors.

CONCLUSION
For the foregoing reasons, the judgment against the remaining two defendants, Elmwood and Dr. O'Connell, is vacated and the case is remanded to the trial court for a new trial on the merits.
JUDGMENT VACATED, REMANDED FOR NEW TRIAL.
MURRAY, J., concurs in the result.
TOBIAS, J., dissents and assigns reasons.
GORBATY, J., dissents.
TOBIAS, J., Dissents and Assigns Reasons.
I respectfully dissent.
The majority's conclusion that a new trial is warranted because the trial court altered the jury interrogatories to clarify them without consulting the parties once the jury indicated that they were deadlocked as to two of three parties defendant is not error. Although our Code of Civil Procedure is silent with respect to altering jury interrogatories once the jury has been charged and instructed as to those interrogatories, it defies common sense to say those interrogatories cannot be corrected as the necessities dictate.[1] Concededly, the trial court should have informed the parties of the change to the interrogatories before reading them to the jury, but the change merely clarified the law for the jury as permitted by La. C.C.P. art. 1796 C(4).
La. C.C.P. arts. 1792 and 1796 permit the trial court to correct and clarify the jury charge after the jury retires. In the process of correcting the charge, if the court notes an error in the interrogatories or the interrogatories need clarification, the court is well within its discretion to assure that the jury decides the issues in the case based upon the facts and law. La. C.C.P. art. 1796 C(4).
In the case at bar, the only change to the interrogatories respecting Dr. O'Connell and Elmwood was to clarify whether the plaintiffs proved by a preponderance of evidence whether the defendants breached *809 the applicable standard of care. The trial court had previously explained that the parties had to prove their case by a preponderance of evidence and what that phrase meant; the court also explained what was meant by the standard of care. (Obviously, the jury understood what standard of care meant because they had reached a verdict as to Dr. McCullough prior to the change to the interrogatories.)
Further, the trial judge did not comment upon the evidence in the presence of the jury when she explained that she was altering the interrogatories. (Perhaps, if the change had been to alter the interrogatories to add that the burden of proof was something other than preponderance of evidence, then the appellants' argument would be stronger.)
The jury, following the amendment, returned a verdict in favor of Dr. O'Connell. Therefore, in my view, the majority errs in ordering a new trial as to the appellants' claims against him.
La. C.C.P. art. 1811 B, relating to judgments notwithstanding the verdict ("JNOV"), provides in pertinent part:
If no verdict was returned, the court may render a judgment or order a new trial.
The literal language of the article permits the trial court to render a judgment based upon the facts and law if a jury does not return a verdict.[2] Under the literal language of article 1811 B, the trial court was permitted to render a judgment as to Elmwood, but the standard the trial court was to use was that for a JNOV, by virtue of the placement of the language permitting the trial court to render a judgment if no verdict was returned in the codal article dealing with JNOVs. I agree with the majority that conflicting evidence was presented respecting the negligence of Elmwood nurses, but the appellants offered no evidence that Thad's shortness of breath, if in fact he was experiencing any, was a direct or indirect cause of his death. The cause of death was an electrical cardiac disturbance involving a lethal heart arrhythmia.[3]
The appellants presented no evidence from a nurse expert that Elmwood nurses breached the applicable standard of care.[4]See La. R.S. 9:2794. In my view, a physician expert ought to be able to state the standard of care for a nurse, because physicians are in the best position to explain what a physician should expect of nurses attending to patients.
It therefore follows that the trial court did not err under the JNOV standard[5] *810 when it dismissed Elmwood for a want of evidence that shortness of breath caused the lethal arrhythmia.
The appellants assert that the trial court erred in granting an "involuntary dismissal" of their case against Elmwood because an involuntary dismissal is not available in a jury trial. The appellants are correct; however, the practical difference between an involuntary dismissal and a directed verdict (the latter being applicable to a jury trial) is a distinction without a difference. Judges, lawyers, and ordinary people confuse the terminology regularly when speaking and writing. The motion for either is understood to mean that a party has not carried his/her/its burden of proof as a matter of law. The majority, in my view, errs in finding the trial court's misspoken terminology is anything but purely harmless, for it is clear that the trial court meant that the appellants had failed to carry their burden as a matter of law.
Although the majority fails to address the errors relating to the jury charge because they find the matter must be remanded for a new trial as to Dr. O'Connell and Elmwood, because I conclude that the majority errs in their conclusion on the other assignments of error, I am compelled to address the jury charge issues lest a reviewing court finds that the majority's result is correct.
The appellants' first complaint is that the trial court erred in not giving the following charge, based upon Ricker v. Hebert, 94-1743 (La.App. 1 Cir. 5/5/95), 655 So.2d 493:
[W]hen the same treatment for the same condition is performed by members of more than one health care discipline, an expert health care professional having training, knowledge, and experience in performing the procedure in question may testify regarding the standard of care for performing the procedure.
A trial court is charged with giving a correct, sufficient jury charge to the jury. Girvan v. New Orleans Public Service, Inc., 94-0681 (La.App. 4 Cir. 11/30/94), 646 So.2d 481, 483. But a trial court has great discretion in giving an appropriate charge without needless repetition, which can unduly emphasize a point of law, thereby unduly prejudicing the jury one way or another. The jury charge given in the case instructed the jury to consider the statements about the law as a whole, without singling out any individual point or idea. In the context of this case, I cannot say that the trial court abused its discretion in not giving the requested charge, for it is included by implication in the actual charge given and is not a rule of law in this circuit.
The trial court's charge also essentially parroted La. R.S. 9:2794 stating:
Plaintiff shall have a burden of proving one, the degree of knowledge or skill possessed, or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar locale.
It was not error for the trial court to give the charge. The appellants however, contend that the charge misled the jury because the appellants' two experts were not from Louisiana, thus leaving the jury with the impression that those experts were not properly qualified to discuss the applicable standard of care because they were not from Louisiana.
This technical difference is of little importance in this case for the two expert witnesses were duly qualified as experts by the court. Such militates to a conclusion that the court had determined that their testimony was relevant to the case as a whole respecting the standard of care of *811 a Louisiana physician. It therefore follows that the error, if any, was harmless.
Finally, the appellants content that the trial court erred in charging the jury that:
[T]he testimony of a treating physician should be afforded more weight and probative value than that of a physician who has made an examination solely for the purpose of giving expert testimony regarding a plaintiff's condition.
The appellants contend, and rightfully so I think, that the language is only appropriate and applicable to cases involving personal injuries related to accidents or workers' compensation, and not to medical malpractice cases. Obviously, a reasonable argument can be made that to give the charge in a medical malpractice case would lead the jury to possibly believe that the defendant health care provider is more credible on facts than the plaintiff's or defendant's expert who was not a treating health care provider. In this case, the trial court gave the charge at the end of the substantive charges. The appellants contend that this overemphasized the issue in the jury's mind.
This charge would have been better if omitted from the given instructions. But the language is ambiguous and can be understood also to express that the treating physician is in a better position to observe a patient first hand at the moment of illness and thus is in a better position to address the objective symptoms of the patient. In the latter context, the error is harmless. Further, applying the instruction to the factual contest between the appellants and the nurses as to whether Thad was short of breath renders the same harmless error conclusion. The appellants state that Thad was short of breath and they reported it to the nurses. The nurses did not chart shortness of breath, implying that either (a) any labored breathing by Thad post-surgery was normal given the nature of his surgery and/or his morbidly obese condition, or (b) more significantly, the absence in the record of any evidence that Thad himself complained of shortness of breath to the nurses. Again, I conclude the error is harmless.
The death of Thad is indeed tragic; however I conclude that we are required to affirm the judgment below.
GORBATY, J. Dissents.
I respectfully dissent for the reasons assigned by Judge Tobias.
NOTES
[1] After careful review of the trial transcript, the trial court judge read for the record the changes made to Question 1 of the interrogatories. However, after the jury returned with a verdict as to all the parties, it is apparent from the trial transcripts that the trial court judge amended questions 1, 2, 3, and 4. A record was not made of such until the jury returned the verdict.
[2] The record does not contain a copy of the judgment; therefore we accept the undisputed fact that the trial court granted Elmwood an involuntary dismissal.
[3] A. (1) A judgment dismissing an action shall be rendered upon application of any party, when the plaintiff fails to appear on the day set for trial. In such case, the court shall determine whether the judgment of dismissal shall be with or without prejudice.

(2) The court, on its own motion, may dismiss an action without prejudice when all the parties thereto fail to appear on the day set for trial; however, when a case has been dismissed pursuant to this provision and it is claimed that there is a pending settlement, either party may reinstate the suit within sixty days of receipt of the notice of dismissal, and any cause of action which had not prescribed when the case was originally filed shall be fully reinstated as though the case had never been dismissed.
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
C. A judgment dismissing an action without prejudice shall be rendered as to a person named as a defendant for whom service has not been requested within the time prescribed by Article 1201(C), upon contradictory motion of that person or any party or upon the court's own motion, unless good cause is shown why service could not be requested, in which case the court may order that service be effected within a specified time.
[4] Art. 1811. Motion for judgment notwithstanding the verdict

A. (1) Not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment under Article 1913, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.
(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
(3) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of the signing of the judgment notwithstanding the verdict under Article 1913. The motion shall be served pursuant to Articles 1976 and 1314.
E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted.
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.
LSA C.C.P. Art. 1811, Motion for judgment notwithstanding the verdict
[1] Smith v. Tiblier, 374 So.2d 685 (La.App. 4 Cir.1979), cited by the majority, is distinguishable for the trial court's alteration of the interrogatories therein was material. In the case at bar, the change was clerical.
[2] La. C.C.P. art. 1811 makes no distinction between general and special verdicts under La. C.C.P. arts. 1812 and 1813. In my view, it therefore applies to both.
[3] This case is not materially different from Webb v. Tulane Medical Center Hospital, 96-2092 (La.App. 4 Cir. 10/1/97), 700 So.2d 1141, writ denied, 97-2910 (La.2/6/98), 709 So.2d 734, where the Fourth Circuit reversed the trial court's finding that the nursing staff's failure to regularly monitor a patient during the infusion of packed red blood cells was a cause of the patient's death because the plaintiff had failed to offer expert evidence that the failure to monitor would have made a difference. The case at bar similarly lacks expert evidence that shortness of breath caused the arrhythmia.
[4] Obviously, if a case involving nurse malpractice met the analogous circumstances of Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, the testimony of a nurse expert would be unnecessary.
[5] The JNOV standard is one that when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable persons could not arrive at a contrary verdict. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Davis v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/28/00), 774 So.2d 84.